UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Kelly Ann Tripp, | ) | Civil Action No. 5:21-0090-KDW |
| Plaintiff, | ) | |
| vs. | ) | |
| Kilolo Kijakazi, Acting Commissioner of Social Security,[1] | ) | ORDER |
| Defendant. | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). Having carefully considered the parties' submissions and the applicable law, the court affirms the Commissioner's decision for the reasons discussed herein.

I.     Relevant Background

   A.     Procedural History

On November 15, 2018,[2] Plaintiff protectively filed for DIB, alleging a disability onset date of November 11, 2018. Tr. 179-86. The claim was denied initially on April 25, 2019, Tr. 77, and upon reconsideration on August 19, 2019, Tr. 80. On October 4, 2019, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 117. ALJ J. Petri conducted a hearing on May 12, 2020,

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the named defendant in this action.

[2] The Application Summary is dated December 3, 2018 and references a completed application date of November 27, 2018. Tr. 179. However, the Disability Determination and Transmittal indicates a filing date of November 15, 2018. Tr. 77.

taking testimony from Plaintiff and Vocational Expert ("VE") Marilyn Stroud. Tr. 33-60. Representing Plaintiff at that hearing was her attorney, Thomas Phillips. Tr. 33. The ALJ denied Plaintiff's claim in a decision dated June 2, 2020. Tr. 9-26. Plaintiff requested review of this decision from the Appeals Council. Tr. 165-78. The Appeals Council denied Plaintiff's request for review on November 23, 2020, making the ALJ's June 2020 decision the final decision of the Social Security Commissioner. Tr. 1-5. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed January 11, 2021. ECF No. 1.

  B. Plaintiff's Background

Plaintiff was born in October 1966 and was 52 years old as of her alleged onset date of November 11, 2018. Tr. 199. In her form Disability Report-Adult dated December 3, 2018, Plaintiff indicated she completed the 6th grade in 1984,[3] did not attend special education classes, and did not complete any specialized job training, trade, or vocational school. Tr. 203. She listed her past relevant work ("PRW") as restaurant server (March 2006-April 2007) and home health aide (April 2007-Nov. 2018). *Id.* Plaintiff indicated she stopped working on November 11, 2018 because of her conditions which she listed as osteoarthritis shoulders, neck, lower back, feet, hands; anxiety; and depression. Tr. 202. Plaintiff indicated that she was 5'10" tall and weighed 169 pounds. *Id.*

In a Disability Report-Appeal dated May 23, 2019, Plaintiff indicated that her conditions had become more severe and caused her greater limitations and these changes occurred gradually. Tr. 227. In a subsequent Disability Report-Appeal dated October 7, 2019, Plaintiff indicated changes in her medical conditions that occurred over time and noted: "'Pain in hands have gotten a lot worse. I am

---

[3] At the administrative hearing Plaintiff testified that she completed the fourth grade, although when her family moved to South Carolina from Florida she was placed in the sixth grade. Tr. 40.

walking bent over a lot because of pain in my back.'" Tr. 256. Plaintiff noted changes in her activities and indicated that it was hard to clean her house and she was unable to play with her dogs. Tr. 259.

  C. Administrative Proceedings

On May 12, 2020, Plaintiff appeared with counsel for her administrative hearing in Greenville, South Carolina and testified regarding her application for DIB. Tr. 33. VE Stroud also appeared and testified at the hearing. *Id.* Due to the extraordinary circumstance of the Covid-19 Pandemic the hearing was conducted telephonically. Tr. 36.

  1. Plaintiff's Testimony

In response to questions from the ALJ Plaintiff indicated that she completed the fourth grade, although when her family moved to South Carolina from Florida she was placed in the sixth grade. Tr. 40. Plaintiff testified that she attempted four times to get her GED, but she was unable to pass the comprehension and reading skills portion. Tr. 41. Plaintiff stated she is 5'6.5" tall and weighed 163 pounds, but that her weight fluctuated up and down within 15-20 pounds. *Id.* Plaintiff testified that she is left-handed, single, and lived alone. *Id.* Plaintiff stated that her sister was paying her bills, but because her sister "lost one of her jobs" due to the pandemic Plaintiff was trying to lower her bills. Tr. 42. Plaintiff stated that she once received unemployment benefits but that was over 15 years prior. *Id.* Plaintiff confirmed that she has a driver's license and does not have any trouble driving. *Id.* Plaintiff stated she last worked on November 18, 2018. *Id.* At that time she was taking care of her mother as a patient, but when her mother (who weighed at least 300 pounds) became immobile, Plaintiff was no longer able to "turn her" or do the caretaking job. Tr. 43. Plaintiff confirmed that from 2008 to 2018 she worked with Public Partnerships taking care of her mother as a home health aide. *Id.* Plaintiff stated that initially she worked as "a glorified house cleaner" for her mother who was disabled due to fibromyalgia. However, her mother was beaten by Plaintiff's brother who "tried

3

to kill her" and Plaintiff then had to "change her diaper and turn her and give her bed baths . . . ." Tr. 44. Plaintiff testified that in 2006-2007 she worked in a Subway restaurant making sandwiches. Tr. 44-45.

Plaintiff testified that she is currently on medication that is prescribed by her family doctor. Tr. 45. She stated that she does not see a rheumatologist because of lack of funds and she does not have medical insurance. Tr. 45-46. Plaintiff stated that she uses a cane every day because she has "no kneecap in [her] left knee" and her "knee gives out." Tr. 46. Plaintiff confirmed that she has fallen, and she last fell three days ago. *Id.* Plaintiff also indicated that she has vertigo. Tr. 47. Plaintiff stated that she has been using the cane daily for the last two months, and before that it was two or three times a week when her "knee was bothering [her]." *Id.*

Plaintiff stated that she is unable to work because she has a lot of pain. Tr. 48. She stated that she has pain in her neck, hands, knee, and back. *Id.* Plaintiff stated that she has to pick up a gallon of milk with both hands, and she "can't stand for so long or sit for so long; it's up and down." Tr. 48. Plaintiff testified that her mental health limited her ability to work because she had mood swings. *Id.*

In response to questions from her attorney Plaintiff testified that her normal height is 5'10.5" instead of her current height of 5'6.5" and she is shrinking. Tr. 48-49. Plaintiff stated that when she was working as a caregiver she had problems with her back, neck, knee, ankle, and hands. Tr. 49. Plaintiff stated that she does not have a left kneecap, she has bursitis in her left shoulder, and her fingers and hands "would get numb and feel like they were being stretched." *Id.*

Plaintiff testified that she does not participate in any social activities outside of her home because of "[t]oo much pain, no money." Tr. 49-50. Plaintiff stated that she leaves the house once every two weeks. Tr. 50. She stated that she is able to read and write simple words but because of her hands she "can't hold a pen or a pencil right; I have to hold it in this angle and write." *Id.* Plaintiff

4

testified that she drives only short distances, and the 15-minute drive to her attorney's office for the administrative hearing was the farthest she had driven in over a year. Tr. 50-51. She stated that she shops by using the Walmart app to place her order and then the items are brought out to her car. Tr. 51. Plaintiff stated that she very seldom cooks and cleans, and that she had not vacuumed her house in three weeks. *Id.* She testified that she could not use a computer for office functions, but she would be able to type using one finger at a time. Tr. 52. Plaintiff stated that she could probably take "about ten" steps without using her cane, but she confirmed that she uses her cane all the time. *Id.* Plaintiff stated that her cane has a strap, so that if her "hand gives out" the cane will not fall. *Id.* Plaintiff's attorney noted that Plaintiff was wearing braces on both hands. Tr. 53. Plaintiff stated that she wears them because of the "osteoarthritis and rheumatoid arthritis in both of [her] hands." *Id.* She indicated that the braces helped "a little bit" and made the pain "more bearable" especially when it was cold or raining. *Id.* Plaintiff testified that she is able to stand in one spot without moving for about five minutes, and she cannot sit for long noting that she had "been up out of this chair about six/seven times" at the hearing. Tr. 53-54. Plaintiff stated that she can lift a gallon of milk with both hands, and if she tries to lift it with one hand her arm "starts trembling." Tr. 54. Plaintiff testified that she has problems with gripping or fingering items, and stated she has problems opening pill bottles and then putting the lids back on because of her hands shaking. *Id.* Plaintiff confirmed that the weather makes her conditions worse. Tr. 55.

    2. VE's Testimony

The VE identified Plaintiff's prior occupations as home attendant, Dictionary of Occupational Titles ("DOT") number 354.377-014, semi-skilled, SVP:3, generally performed at medium level but in this case performed at very heavy level; and fast-food worker, DOT number 311.472-010, SVP:2, performed at light level. Tr. 56. The VE indicated there were no transferable skills to sedentary work.

*Id.* The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work history with the following limitations:

> hypothetical #1 is light work, except this hypothetical individual could never climb ladders, ropes, or scaffolds; she could occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl; she could frequently handle or finger; she could have frequent exposure to extreme cold or excessive vibration, but not exposure to workplace hazards; she is further limited to simple routine tasks performed two hours at a time; and occasional interaction with the public.

Tr. 56-57. The VE testified that would exclude Plaintiff's past work, but she provided the following examples of available jobs: laundry classifier, DOT number 361.687-014, SVP:2, unskilled, light, 34,000 in the national economy; cleaner/housekeeping, DOT number 323.687-014, SVP:2, light, 220,000 in the national economy; and production assembler, DOT number 706.687-010, SVP:2, light, approximately 61,000 in the national economy. Tr. 57. The VE confirmed that all three of the jobs had a GED reasoning level of one or two. *Id.*

The ALJ noted that she would not ask any hypotheticals at the sedentary level because the grids would direct a finding of disabled. Tr. 57-58. For her second hypothetical she asked the VE to "take everything from #1, but add the further limitation that this hypothetical individual would be off-task 15% or more of a workday in addition to regularly scheduled breaks." Tr. 58. The VE stated that based on her experience there would be no jobs available. *Id.* The VE confirmed that her testimony was consistent with the DOT and companion publications, and that anywhere the DOT is silent—such as off-task—she filled the gaps based on her professional experience. *Id.*

Plaintiff's counsel asked the VE if the identified light jobs would be available if the individual was unable to stand or walk up to six hours and could lift only ten pounds less than frequently. Tr. 58. The VE responded in the negative, noting that the individual "would only be able to do sedentary work." Tr. 59.

With no further questions, the hearing concluded. Tr. 59-60.

6

II.    Discussion

    A.    The ALJ's Findings

In her June 2, 2020 decision, the ALJ made the following findings of fact and conclusions of law:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.
>
> 2. The claimant has not engaged in substantial gainful activity since November 11, 2018, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> 3. The claimant has the following severe impairments: degenerative disc disease in the lumbar spine, status post a cervical spine fusion, degenerative joint disease of the left knee, rheumatoid arthritis, vertigo, major depressive disorder and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the individual can never climb ladders, ropes and scaffolds. The individual can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. The individual can frequently handle and finger. The individual can have frequent exposure to extreme cold or excessive vibration, but no exposure to workplace hazards. The individual is limited to simple, routine tasks performed two hours at a time, and occasional interaction with the public.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on October 15, 1966 and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).
>
> 8. The claimant has a marginal education and is able to communicate in English (20 CFR 404.1564).

>   9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
>   10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).
>
>   11. The claimant has not been under a disability, as defined in the Social Security Act, from November 11, 2018, through the date of this decision (20 CFR 404.1520(g)).

Tr. 14-15, 17, 24-26.

> B.  Legal Framework
>
>   1.  The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that

impairment meets or equals an impairment included in the Listings;[4] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

9

satisfies that burden, the claimant must then establish the inability to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

        2.        The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that the conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed

"even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

    C.    Analysis

Plaintiff alleges that the issues are (1) whether the ALJ improperly evaluated Plaintiff under the Medical-Vocational Guidelines, (2) whether the ALJ failed to meet her burden at Step Five of the sequential evaluation, and (3) whether the ALJ's unfavorable order is supported by the longitudinal record. Pl.'s Br. 3, ECF No. 12.

        1.    The ALJ's Residual Functional Capacity ("RFC") Determination and Consideration of the Medical-Vocational Guidelines ("the Grids")

Plaintiff argues that "[g]iven Plaintiff's age and education level, she would 'grid out' if limited to sedentary work." Pl.'s Br. 5 (citing Grid Rules 201.09 and 201.10). Plaintiff contends the ALJ's finding that determined she is capable of performing work at the light exertional level is "inconsistent with Plaintiff's testimony, the longitudinal record, and the testimony of the Vocational Expert[.]" *Id.* The Commissioner asserts that substantial evidence supports the ALJ's RFC determination for a range of light work with additional limitations that accounted for postural, manipulative, environmental, and mental health restrictions caused by Plaintiff's impairments. Def.'s Br. 6, ECF No. 13.

        a.    Plaintiff's RFC

An RFC assessment is a determination of an individual's ability to perform sustained work-related activities on a regular and continuing basis. SSR 96-8p, 1996 WL 374184 at *1. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* (emphasis in original). At the administrative hearing level, the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). An ALJ's RFC assessment should be based on all relevant evidence and will consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(3) and (4).

11

Here, the ALJ made the following RFC assessment regarding Plaintiff:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the individual can never climb ladders, ropes and scaffolds. The individual can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. The individual can frequently handle and finger. The individual can have frequent exposure to extreme cold or excessive vibration, but no exposure to workplace hazards. The individual is limited to simple, routine tasks performed two hours at a time, and occasional interaction with the public.

Tr. 17. The ALJ stated that in making this finding she considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." *Id.* The ALJ stated that she also "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c." *Id.*

The regulations define light work as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). As noted above, an ALJ's RFC assessment should be based on all relevant evidence and consideration of a claimant's abilities.

In making her RFC determination the ALJ cited to Plaintiff's hearing testimony; 2018-2020 treatment notes from Plaintiff's primary care provider, Dr. Daniel Dahlhausen; a 2019 consultative examination by Dr. Lary R. Korn; x-rays of Plaintiff's lumbar spine and Plaintiff's left knee from 2019; a February 2019 psychological evaluation by Dr. Renuka Harper; the medical opinions of treating physicians, evaluating physicians, and state agency medical consultants[5]; and a third-party

---

[5] Plaintiff seems to contend that the ALJ found Plaintiff capable of performing at the light level based on the findings of State agency consultant Dr. Jean Smolka. Pl.'s Br. 5. On April 25, 2019 Dr. Smolka provided a physical RFC assessment of Plaintiff as part of Plaintiff's initial disability determination.

12

function report completed by Plaintiff's sister. Tr. 18-24. After her discussion of the medical evidence the ALJ noted:

> Overall, the claimant's allegations of severe functional limitations and pain related to her severe impairments are not supported by the objective evidence. Although the claimant has received treatment for her impairments, that treatment has been essentially routine and conservative in nature, and generally successful in managing the claimant's symptoms. Moreover, treatment records do not substantiate the frequency and severity of symptoms described by the claimant. While the claimant has subjective complaints of low back pain, neck pain, hand pain, knee and hip pain, objective testing has not revealed persistent severe abnormalities and physical examinations have not revealed significant functional limitations beyond those already accommodated in the residual functional capacity adopted herein. Examinations show normal muscle strength, normal sensation and reflexes and denote few, if any, deficits other than subjective complaints of pain with reduced range of motion in the right shoulder and lumbar spine. Additionally, even though the claimant complained of hand pain, examinations show no more than mild arthritis in the hands, no evidence of arthritic type swelling or inflammation in the joints and no deficits in fine or gross manipulations and no mention of reduced grip strength (Exhibits 1F, 2F, 4F, 6F and 23F).

Tr. 22.

Plaintiff argues that the ALJ erred in making her RFC assessment because "important information in the longitudinal record has not been properly considered[.]" Pl.'s Br. 7. Over the next nine pages of her Brief, Plaintiff sets out a chart in reverse chronological order from January 2020 through November 1999 of observations and findings contained in medical records. *Id.* at 7-16. Of

---

Tr. 68-72. Dr. Smolka determined Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; stand, walk, or sit for a total of six hours in an eight-hour workday. Tr. 69. She also determined Plaintiff had some postural, manipulative, and environmental limitations. Tr. 69-70. The ALJ considered Dr. Smolka's opinion and found it persuasive based on the evidence available at the time of Dr. Smolka's review. However, the ALJ found that "more recent evidence including the claimant's testimony" supported additional limitations. Tr. 23. Accordingly, the ALJ's RFC assessment did not rely totally on Dr. Smolka's findings. The undersigned notes that on August 22, 2019, State agency medical consultant Dr. Clarice Bell-Strayho provided a physical RFC assessment as part of the reconsidered disability determination. Tr. 91-94. Dr. Bell-Strayho also indicated that Plaintiff could perform work at the light exertional level; however, her postural limitations were not as limiting as Dr. Smolka's, and she did not assess any manipulative limitations. Tr. 92.

13

the 17 records identified by Plaintiff, the ALJ cited to 10 of them. The remaining seven records consist of the following:

- Exhibit 10F – 1999 x-rays of Plaintiff's left shoulder with "unremarkable" results
- Exhibit 12F – 1999 MRIs of Plaintiff's left shoulder and cervical spine documenting a normal shoulder and prominent disc herniation of C5-C6
- Exhibit 13F – 2000 notation of "abnormal mammogram"
- Exhibit 16F – 2000 doctor's notes excusing Plaintiff from work
- Exhibit 19F – 2015 normal chest x-ray and 2013 x-ray of left knee showing mild degenerative changes with possible joint effusion but no acute abnormality
- Exhibit 20F – 2004-2007 normal x-rays of the left knee; 2002 and 2006 mammograms
- Exhibit 21F – 2015 thyroid aspiration procedure.

Plaintiff offers no explanation as to how these records are important to the ALJ's RFC assessment or what, if any, impact they would have on the ALJ's RFC assessment. Pursuant to the regulations, an ALJ is required to assess a claimant's RFC "based on all of the *relevant* medical and other evidence." 20 C.F.R. § 404.1545(a)(3) (emphasis added). There is "no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]" *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014); *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005) (finding that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection" insufficient to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole); *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."). Moreover, an ALJ's findings, including those involving interpretation of medical evidence, will be upheld by this court provided they are rational and have sound support by the record. *See Vitek,* 438 F.2d at 1157–58; *see also Thomas v. Celebrezze,* 331 F.2d at 543. To the extent that the ALJ dismissed or declined to discuss certain evidence, the undersigned finds that any error is harmless. Here, the ALJ considered the objective evidence, the opinion evidence, and

14

Plaintiff's testimony and included in her RFC the limitations she found consistent with that evidence. Accordingly, the undersigned finds no error in the ALJ's RFC assessment.

b. The Grids

The Medical-Vocational Guidelines, also referred to as "the Grids," are guidelines, located at 20 C.F.R. Part 404, Subpart P, Appendix 2. *See Heckler v. Campbell*, 461 U.S. at 461. The Grids consist of three "Tables," each representing a different RFC, including sedentary (Table 1), light (Table 2), and medium work (Table 3). *Id.* Each table then accounts for other vocational factors, including age, education, and previous work experience. For each combination of factors, the Grids provide whether the claimant is "Disabled" or "Not disabled." *Id.* In considering a claimant's age, the Regulations establish particular age categories: (1) younger person (under age 50); (2) a person closely approaching advanced age (age 50-54); and (3) a person of advanced age (age 55 or older). 20 C.F.R. § 404.1563(c)-(e). As the ALJ noted in her decision, as of her alleged onset date Plaintiff was 52 years old—an individual closely approaching advanced age. Tr. 25.

Once an ALJ determines a claimant's RFC, she may use the Grids to determine the claimant's level of disability and potential for employment. *Walker v. Bowen,* 889 F.2d 47, 50 (4th Cir. 1989). The ALJ found that based on the record Plaintiff had the RFC to perform light work with limitations. Tr. 17. The ALJ noted that if Plaintiff had the RFC to perform the full range of light work "a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.11." Tr. 25. This rule is found in Table 2 of the Grids that determines disability for individuals limited to light work. 20 C.F.R. Pt. 404, Subpt. P, App. 2. Rule 202.11 refers to an individual closely approaching advanced age, with limited or less education, with skilled or semi-skilled skills that are non-transferable and that Rule concludes that such an individual is not disabled.

15

If the ALJ were to mechanically apply the Grids—even using the rules applicable to unskilled work experience—the Grids would direct a finding of not disabled based on Plaintiff's RFC for light work. Because the ALJ found that Plaintiff's "ability to perform all or substantially all of the requirements of [light] level of work has been impeded by additional limitations" she made use of a VE to consider whether jobs existed in significant numbers in the national economy that Plaintiff could perform. Tr. 25-26. Given certain vocational factors the VE testified that Plaintiff could perform the representative light level jobs of laundry classifier, cleaner/housekeeping, and production assembler. Tr. 26.

While Plaintiff asserts that she would "grid out" if limited to sedentary work, the ALJ's finding that Plaintiff has the RFC to perform light work precludes Plaintiff from a finding of "disabled" based on the Grids. Substantial evidence supports the ALJ's finding regarding use of the Grids.

2. The ALJ's Step Five Determination

Plaintiff argues that the ALJ disregarded testimony from the VE that would be to her benefit. Specifically, Plaintiff argues the ALJ excluded testimony that (1) there were no transferable skills to sedentary work, (2) there would be no jobs available if Plaintiff was off task 15% or more during the workday, and (3) there would be no light jobs if Plaintiff was unable to stand or walk up to six hours or lift ten pounds frequently. Pl.'s Br. 6.

It is a claimant's burden to present evidence of disability. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512(a) (generally setting forth a claimant's burden to produce evidence of a disabling

16

impairment and the Agency's right to deny a claim for lack of evidence); *Blalock v. Richardson,* 483 F.2d at 774.

> A vocational expert may be used at steps four and five to assist "in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). For a vocational expert's opinion to be "relevant or helpful," it must be responsive to a proper hypothetical question. *Id.* A proper hypothetical question "fairly set[s] out all of claimant's impairments" that the record supports. *Id*.

*Britt v. Saul*, 860 F. App'x 256, 263 (4th Cir. 2021). "The Fourth Circuit Court of Appeals has held that if a limitation 'does not affect [the] ability to work, . . . it [is] appropriate to exclude it from the hypothetical tendered to the vocational expert.'" *Marion v. Comm'r, Soc. Sec. Admin.*, No. 2:16-CV-3285-CMC-MGB, 2018 WL 3120646, at *10 (D.S.C. Jan. 30, 2018), *report and recommendation adopted sub nom. Marion v. Berryhill*, No. 2:16-CV-3285-CMC, 2018 WL 1324503 (D.S.C. Mar. 15, 2018) (quoting *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015)).

At the administrative hearing the ALJ used a VE to opine on jobs Plaintiff could perform given her vocational profile. Based on Plaintiff's PRW, the VE testified Plaintiff had no skills transferable to sedentary work but, based on the ALJ's first hypothetical, there were other jobs available at the light, unskilled level that the individual could perform. Tr. 56-57. In her second hypothetical, the ALJ added the limitation that the individual "would be off-task 15% or more of a workday in addition to regularly scheduled breaks." Tr. 58. The VE testified that with that limitation there would not be any jobs available. *Id.* In response to a hypothetical from her attorney, the VE testified that there would be no jobs available at the light exertional level if the "individual was unable to stand or walk up to six hours" and "could only lift ten pounds less than frequently[.]" *Id.*

As discussed previously, the ALJ considered Plaintiff's hearing testimony and the medical evidence of record in making her RFC determination for light work that did not require skills transferable from Plaintiff's past work and did not include a 15% off-task restriction. While the ALJ

could use the VE to assist in determining whether there is available work that Plaintiff can perform, the ALJ was not obligated to accept or rely on all of the VE's responses.

> The RFC, and by extension, any hypothetical question relied upon, need only reflect those limitations that are credibly established by the record. *See Russell v. Barnhart,* 58 F App'x 25, 30 (4th Cir. Feb. 7, 2003) (citing *Chrupcala v. Heckler,* 829 F.2d 1269, 1276 (3d Cir. 1987); *Youkers v. Colvin,* 2014 WL 906484, at *11 (S.D.W.Va. Mar. 7, 2014); *Rutherford v. Barnhart,* 399 F.3d 546, 554 (3d Cir. 2005) (holding that hypotheticals to VEs need not credit every symptom alleged by the claimant, only those that are "medically established"); *Jones v. Barnhart,* 364 F.3d 501, 506-07 (3d Cir. 2004) (holding that, while ALJs may pose multiple hypotheticals, they need only credit those that are consistent with the evidence of record). The ALJ is not required to adopt VE testimony in response to limitations that are not supported by the record. *Youkers,* 2014 WL 906484 at *11.

*Baker v. Colvin*, No. 3:13-CV-20376, 2015 WL 5687544, at *9 (S.D.W. Va. Sept. 8, 2015), *report and recommendation adopted,* No. CV 3:13-20376, 2015 WL 5698511 (S.D.W. Va. Sept. 28, 2015). *See also Craigie v. Bowen*, 835 F.2d 56, 57-58 (3d Cir. 1987) (holding that ALJ is not required to credit VE testimony elicited in response to a hypothetical question that includes limitations that ALJ finds not to be credible). "Further, the fact that the [VE] responded to a hypothetical posed by counsel for plaintiff . . . which was not consistent with the ALJ's RFC determination is of no consequence." *Parker v. Colvin*, No. 1:13-CV-00011-MOC, 2013 WL 4748409, at *3 (W.D.N.C. Sept. 4, 2013). The court finds that the ALJ did not err in her Step Five determination that Plaintiff could perform other work existing in significant numbers in the national economy.

The sole issue before the court is whether substantial evidence supports the ALJ's decision. *Blalock v. Richardson*, 483 F.2d at 775 ("[T]he language of § 205(g) precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). As noted by the Supreme Court, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is 'more than a mere scintilla.' . . .

It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations omitted). Here, because the ALJ identified and discussed evidence supporting her conclusion and "buil[t] an accurate and logical bridge from the evidence to [her] conclusion," *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016), the court finds no basis for remand.

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported by substantial evidence. Based on the foregoing, the undersigned finds that Plaintiff has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also* 42 U.S.C. § 405(g). Therefore, the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

June 14, 2022                                                          Kaymani D. West
Florence, South Carolina                                     United States Magistrate Judge